Your Honor, this case is a very narrow, single issue, and that is simply, does a lien in favor of a Louisiana Condominium Association act as a, is it a security interest under bankruptcy law definition? If it is, then it is subject to the anti-modification provisions of 1322b-2. The bankruptcy judge, and as affirmed by the district court judge, found that it was a statutory lien rather than a security interest. I would agree with those courts in that there is no Louisiana jurisprudence on point in this particular case. As such, I think we need to establish and review both Louisiana and Federal Bankruptcy Codal Authority on, to arrive at this decision and make those definitions. Under the Bankruptcy Code in Section 101-51, a security interest is one which is created by agreement. Section 502, a proof of claim is one which is deemed allowed when it's, unless it's objected to. In this particular case, Riverbend filed a secured claim, was identified as a secured claim. That claim was, is an allowed claim. It was not objected to. Section 506 defines a secured claim as an allowed claim of a creditor secured by a lien on property of the estate. Again, this meets that definition. The Supreme Court, in its earlier decision in Doosnup and its recent decision in Bank of America v. Colquitt, indicated that a secured claim does not have to be fully secured, but just at least have some security interest in the property, and be fully allowed. This claim would meet both those definitions. If we turn to Louisiana law, Civil Code Article 1927, which is in the chapter on conventional obligations, says that a contract is formed by the consent of the parties. That consent can be established by action or inaction or some other method. In this particular case, the contract, in my opinion, was formed when the condominium declaration was filed in public registry in Orleans Parish. Thereafter, Mr. Green acquired his property. When he acquired his property, he was contractually agreeing to be bound by this previously recorded condominium declaration. Therein lies the consensual agreement. When he signed his deed, his deed was subject to the prior recorded declaration. So under Louisiana Codal Authority, under 1927, I would suggest that the lien is indeed consensual. Now, both Judge Magner, the bankruptcy court judge, and Judge Malazzo, sitting in appeal of the bankruptcy judge decision, I believe were incorrect in finding that this court's opinion in Part T was inapplicable or, for some reason, distinguishable. And what they both seemed to focus on was, well, the court found that the Terra Colony lien did not survive the anti-modification, and that's true, but it didn't because there was no security interest at all. It was totally unsecured. Therein lies the difference. In this case, the bankruptcy court found as a matter of law that the lien of the Riverbend Association had a secured interest in the condominium unit owned by Mr. Green. In fact, in Part T, this court— The actual language in the condominium agreement speaks of it as a privilege. It is a privilege. Which is a term of art here. It's a Louisiana term of art. You're absolutely correct. And if you look at the decision in Part T, which I'll indicate in there, the court said, under Texas law, a homeowners association claim on an unpaid maintenance assessment is secured by a lien running with the land, saying the Terra Colony lien is a binding subordinate security interest in the debtor's primary residence. So if we— What is it that's going to govern this decision? It's really going to be Louisiana law, right? I believe it's Louisiana in connection with the definitions of the bankruptcy code. So under Louisiana law, I mean, it's hard to fault what the bankruptcy judge and the district judge concluded here in terms of the Louisiana law component of it, because it describes itself as a privilege. There's a whole statutory home for it, which is a privilege. Your Honor, the problem with their reliance upon the Beckwith case, machinery case, which they cited, First National Bank v. Beckwith, is that case talks about, and Judge Malazzo in her opinion states, that a privilege is not a security interest. That case is solely arising under, and that decision is based upon Chapter 9, which is the UCC code in Louisiana. It has nothing to do with real estate. In fact, under the UCC sections in Chapter 9, I think it's 10109 Section 11, it specifically excludes real estate. So I would say that their reliance upon carving out that definition— But I thought—I'm not a Louisiana lawyer, although after as many years as I've been called upon to act like one, you might say I'm a stop from saying that. But as I understand it, in Louisiana, what you have to look at is not the cases, but you've got to look at the actual language in the code, the civil code, I guess it's in. No, actually, this would be in the revised statutes. All right, in the revised statutes, that's where you've got to pay attention. And it's explicit. It describes it as a privilege. Right. And there's a statute creating it. The statute creates that privilege. The statute establishes that privilege. And then what it does, it goes on. In Paragraph 1, it establishes it. Paragraph 2 and 3, it says the things that need to be done in order to enforce that privilege. So the condominium association, by its existence, does not have that privilege until certain things are done. One, it has to have the declaration of the condominium regime recorded. Two, it has to send a notice to the delinquent unit owner with an affidavit, and then after seven days, then file its lien in the public registry. So the lien is not established upon the enactment of Title IX, which says we're going to have a lien on a condominium, shall enjoy a lien privilege for unpaid assessments. If you look at the Texas Condominium Act and the Louisiana, they are strikingly similar, and that's because they both basically are based upon the Uniform Condominium Act. But they're both strikingly similar in that both create the lien therein. So as in Part T, as this court found, the lien was created by the Texas Condominium Statute, Section 182.113, yet that court found that it was a consensual lien, a security interest, that it wasn't created by statute, it was not a statutory lien by bankruptcy court definition. Same thing came in the district court opinion in Inouye Perry, which relied upon the Texas State decision in Inouye, where they both said it is a consensual lien created by agreement. The cases in the various circuits around the country, which we cited, there's Phillippe, Bland, and Stern, I believe, are the cases, all rely upon similar situations. The one which was relied upon in opposition, the Young case, is different because in the Young case, the court held that Pennsylvania law, under Pennsylvania law, the purchaser is not bound by the recordation of the declaration. Bound being the key word. In Louisiana, in Texas, in Massachusetts, in Pennsylvania, and all the jurisdictions of the other cases we relied upon, the purchaser is bound by the declaration when they acquire. It's that binding, if you will, that I'm saying makes this a consensual lien rather than a statutory lien. Yes, the association has the right to enforce a lien, but as to that particular owner, that lien does not take effect until that owner becomes bound by those declarations. Therein, I believe, lies the difference. Whether we call it a privilege or whether we call it a lien, in fact, in the statute, in Louisiana statute, it calls it shall have a lien in privilege. I think we're getting into semantics at that stage. That's why I'm saying I don't think we need to focus on the decision in the Beckwith machine case because that's dealing strictly under Chapter 9 of the UCC. This is not a UCC case. This is not a Chapter 9 case. This is a case dealing with real privileges, and therein, I believe, lies the difference. The professors and such that say that Louisiana privileges are non-consensual. In the Beckwith case? I'm citing to people who have written about Louisiana law of privilege. It's cited in the opinion in footnote 16. I mean, it's footnote 16. The law review articles? Law review. I'm asking the professors seem to say that privileges are non-consensual, and there's not a caveat that says except where you have a declaration going through a lot of hoops. Well, I think the difference is if you look at the category of liens and privileges in Louisiana, just strike the word lien from it, if you look at the category of privileges, you can have various privileges which arise solely as an operation of law by force of law, and that's the definition under 11 U.S.C. 101, I think it's 53, where it talks about a statutory lien, one which operates solely by the force of law. For example, if you have a materialman's lien, that materialman's lien arises because the material supplier was not paid. That's all it takes. In this case, in the case of a privilege or a lien on a condominium association for nonpayment of assessments, that lien arises because the owner has agreed to subject himself to that condominium declaration regime. That makes it consensual versus the other categories of Louisiana liens and privileges, which are not required to have any consent. They operate solely as a matter of law. This lien does not operate solely as a matter of law. It requires consent. When you sign your deed saying I'm buying this property and I see it's subject to the condominium declarations recorded, book and page, so and so. Second is you've got to send them the notice at least seven days in advance with the affidavit, and then third, it has to be filed in the public records. That's totally different from the other categories of privileges in Louisiana. So I think we've got to focus on how this lien, this privilege, fits into the statutory authority of the bankruptcy code, and I think Bartee is right on point. If you look at the Texas Code, the Texas Code has the same enabling legislation in there, yet the court found that it was a statutory lien rather than a consensual lien rather than a statutory lien in Texas. That is under Title VII, Condominiums of the Property Code, 82-113 says association lien for assessment. An assessment levied by the association against a unit or a unit owner is a personal obligation of the unit owner and is secured by a continuing lien on the unit. So the Texas legislature has established that lien here. Does that mean that it operates solely as a matter of law? If that's the case, then the panel in Bartee was wrong in finding that it was a consensual security interest. Bartee is the opinion in this circuit which I believe should be applied to this case. I think it's that simple that if you look at what Louisiana calls a contract, you see offer and acceptance, condominiums offering you to buy here, or someone's offering you to buy their property in this condominium association. You accept it. You accept it subject to the declarations which in themselves have the lien set forth. All right. Thank you, Mr. Silverstein. Can you save time for rebuttal, Mr. Gibson? May it please the Court? I'd like to address Bartee first. One key issue I think in Bartee is the fact that the Texas courts treat these types of assessment liens as contractual liens. That, I think, is an important issue, an important distinction here because essentially that contractual lien is a consensual lien, and we simply don't have that here. And, Your Honor, Judge King is correct. Under Louisiana law, we try to anticipate various legal issues. We put them into codes. And one of the things that has been anticipated here is that a condominium association gets a privilege when you purchase a condominium for their assessments. So the fact that at some later time the condominium association may have to record that agreement or at some point within a year, in this case under the statute, has to file a lawsuit to enforce it doesn't alter the fact that it's still a statutory lien and not a contractual obligation. And I would also point out that Bartee relies heavily on two other cases that are cited in the Bartee case, Inwood and Perry. Counsel Rivendell just made a reference to Perry a moment ago. And Perry is very specific that the three definitions in the bankruptcy code of statutory liens, security interests, and judicial liens are mutually exclusive. So I suggest that they really can't have it both ways. All they've done is they've taken the language of a state statute, put it into their agreement, and now they're saying it's now a contract. And the bankruptcy code, at least the history of the bankruptcy code and congressional history, would indicate that these three statutes are mutually exclusive. So they can't have it both ways. It's either a statutory lien or it's a security interest. I really was unclear as to the reference to the recent decision of the U.S. Supreme Court in Bank of America. That's a Chapter 7 lien-stripping case. I think only one circuit, the 11th Circuit, has ever held that a junior lien could be stripped in a Chapter 7 case. So I frankly wasn't surprised by the decision. I don't think it has really any bearing before this court today. If the court were to determine that this was a security interest, then yes, it could not be bifurcated as the court did. I would agree with that point. But, again, it begs the question, is this a statutory lien or is this a security interest? I really don't have a whole lot more to say. I believe that both the district court judge and the bankruptcy court judge were correct in finding this to be a statutory lien, and I would ask that the court affirm on those decisions. Thank you. Unless you all have any questions. Thank you, Mr. Gibson. Mr. Silverstein, you saved time for rebuttal. In the In re Pari decision, which arose out of the Texas District Court, the court, in its opinion, said the party raised three issues, and I'll only go over the first one, whether the creditor's claim is a security interest pursuant to 11 U.S.C. 1322b2, the anti-modification. And then they go on and say a security interest is defined by the bankruptcy code as a lien created by agreement. A lien is a charge against or interest in property to secure payment of a debt or performance of an obligation. Texas law treats restrictive covenants that create assessment liens as contractual liens that touch and concern the land. We agree that Louisiana has no case which says whether or not a privilege from a host kind of association is contractual or statutory. There is no case at this point. That's why we have to look at existing definitions, both in the bankruptcy court and Louisiana code, and look at the case law. I would suggest to you that the decision in Pari, which is relied upon in Bartee, was based upon the Texas Condominium Act, which creates the lien, same as Louisiana. Wherein lies the difference, then? Under the Texas Condominium Act, I already told you how that is created in there. The same language, or very similar language, is in Louisiana. It says the association shall have a privilege on a condominium for all unpaid or accelerated sums assessed. That's no different from the statement in the Texas Condominium Act. Yet, under Texas law, Inwood and Pari and Bartee have all held that it runs with the land, as such it's a contract. Same thing in Louisiana. There's no question, but it runs with the land. Under the Louisiana Condominium Act, under 1123, it indicates that the property is effective against third parties, the condominium declaration is effective against third parties upon registration. So if you compare Louisiana and Texas, they are so similar that there should be no distinction by calling one a lien and one a privilege. If we're trying to get to what is supposed to be happening in the bankruptcy code, I would suggest to you that there is no difference. Thank you. Thank you, Mr. Silverstein. Your case is under submission.